UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey Kuha,

Plaintiff,

v.

City of Minnetonka, et al.,

Defendants.

Civil No. 00-1683 JMR/FLN

**ORDER**

---

Markus Yira, Esq., for Plaintiff.
Paul Reuvers, Esq., for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on April 2, 2001, on Plaintiff's Motion to Amend the Complaint to Add a Claim for Punitive Damages [#6].

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a potentially lethal wound inflicted on Plaintiff Jeffrey Kuha ("Mr. Kuha") by a Minnetonka Police Department canine. Plaintiff filed suit against Defendants City of Minnetonka and Officers William Roth, Kevin Anderson and Dennis Warosh for use of excessive force in effecting his arrest under 42 U.S.C. § 1983, assault, battery and negligence. Mr. Kuha now seeks leave of the Court to amend his complaint to assert a claim for punitive damages against Officers Warosh, Roth and Anderson, in their individual capacities.[1] In considering the Motion to

[1] The City of Minnetonka cannot he held liable for punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)(municipality is not subject to punitive damages under 42 U.S.C. § 1983); but see Spell v. McDaniel, 824 F.2d 1380 (4th Cir.1987), cert. denied, 484 U.S. 1027 (1988).

APR 17 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Amend, the facts are recounted from a fair reading of Mr. Kuha's version of the evidence.

On September 23, 1999, Minnetonka Police Officer Roth conducted a routine traffic stop of Mr. Kuha's vehicle. (See Pl.'s Mem. in Supp. of Motion to Amend the Complaint at 1 ("Pl.'s Supp. Mem.")). Mr. Kuha apparently failed to dim his headlights in violation of Minn. Stat. §§ 169.60 and 169.61. (Id.). The maximum penalty, had Mr. Kuha been convicted of the traffic offense for which he was stopped, was a fine of not more than $300. Minn. Stat. §169.89. As Officer Roth called in the vehicle's license number, Mr. Kuha opened his car door and began running in the direction of a swamp and apartment complex. (Id.). Officer Roth noted that Mr. Kuha was unarmed and made no threatening gestures. (Id.). He immediately called for assistance and found Mr. Kuha's wallet and driver's license in the abandoned vehicle while waiting for other officers to arrive. (Id. at 3). There was no evidence of a weapon in the vehicle and Officer Roth did not believe that Mr. Kuha posed a threat to the public's safety. (Id.).

Officers Rain, Warosh, K-9 Officer Anderson and his canine Arco, one or two other squads from Hopkins and a helicopter responded to Officer Roth's call for assistance in this routine traffic stop. (See Defs.' Mem. In Opposition to Motion to Amend the Complaint at 4 ("Defs.' Opp'n Mem.")). Once the additional squads arrived, they positioned themselves around the perimeter of the area Mr. Kuha ran into and began searching for him. (Id.).

Officers Warosh, Anderson and canine Arco ("Arco"), followed Mr. Kuha's scent trail and eventually found him sitting in some tall brush. (Id. at 5). Upon seeing Officer Anderson, Mr. Kuha raised his arms in the air and stated "I'm done." (Id. at 5-7). Despite this unequivocal surrender, Arco was allowed to apprehend Mr. Kuha by biting and gripping his groin area. (Id.). While Mr.

Kuha instinctively tried to release Arco's grip, Officer Anderson walked around Mr. Kuha checking for weapons. (See Pl.'s Supp. Mem. at 6). Once Officer Anderson ascertained that Mr. Kuha was unarmed, he told Mr. Kuha that he was "not going to call off the dog until [he] . . . let go of the dog's head." (Id.). The Officers allowed the attack to continue for at least 15 seconds before commanding Arco to release Mr. Kuha. (Id.). Mr. Kuha's femoral artery was punctured during the attack and resulted in a significant loss of blood that was potentially lethal. (See Pl.'s Supp. Mem. at 7). Although the Officers noticed the blood spurting from Mr. Kuha's femoral artery, they pushed him to the ground and handcuffed him before attending to his life-threatening injury. (Id.).

## II. DISCUSSION

### A. Standard of Review

In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the laws of the state of Minnesota, must generally conform to the requisites of Minn. Stat. §§ 549.191 and 549.20.[2] See Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994); Olson v. Snap Prod., Inc., 29 F. Supp.2d 1027, 1034 (D.Minn. 1998). Under Minn. Stat. § 549.191, plaintiffs seeking to assert a punitive damage claim must first obtain the leave of the Court to do so, based upon a *prima facie* showing of entitlement. See Olson, 29 F. Supp.2d at 1034. "The plaintiff is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." See Hammond v. Northland Counseling Center, Inc., No. CIV.5-96-353, 1998 WL315333 at *7 (D.Minn. Feb. 27,

[2] The standard for assessing punitive damages in the § 1983 context is the same. Punitive damages in a § 1983 action are assessed when the defendant's conduct involves reckless or callous indifference to the federally protected rights of others. See Smith v. Wade, 461 U.S. 30, 56 (1983); Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1396 (8th Cir. 1997).

1998).

If the Court finds "*prima facie* evidence in support of the motion, the [C]ourt shall grant the moving party permission to amend the pleadings to claim punitive damages." Minn. Stat. § 549.191. *Prima facie* evidence is that evidence which, if unrebutted, would support a judgment in that party's favor. See Olson, 29 F. Supp.2d at 1034 (citations omitted). Under the strictures of Minn. Stat. § 549.191, the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for Entry of Judgment as a Matter of Law. Id.; see also Federal Rules of Civil Procedure 50(a). "Thus, in reaching such a determination, the Court makes no credibility rulings, nor does the Court consider any challenge, by cross-examination or otherwise, to the Plaintiff's proof." See Olson, 29 F. Supp.2d at 1034 (citations omitted).

In evaluating the existence of a *prima facie* showing for the assertion of a claim for punitive damages, the Court must recognize that punitive damages are intended to punish a defendant, or to make an example of a defendant's wrongdoing, and not to compensate the plaintiff who has already been compensated. Id. at 1035. As a consequence, punitive damages may only be awarded when a defendant's conduct reaches a threshold level of culpability. Id. Accordingly, "[a] mere showing of negligence is not sufficient; instead, the conduct must be done with malicious, willful, or reckless disregard for the rights of others." See Olson, 29 F. Supp.2d at 1035 (citations omitted).

Minn. Stat. § 549.20 (1)(a) provides that "[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." The term "deliberate disregard" is comprehensively defined in the statute, as follows:

(b) A defendant has acted with deliberate disregard for the rights or safety of others

> if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20 (1)(b). "Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others, the 'clear and convincing' standard is satisfied." See Olson, 29 F. Supp.2d at 1035-36. Ultimately, when presented with a motion for leave to assert a punitive damage claim, the Court must do more than "rubber stamp" the allegations in the motion papers. Id. at 1036 (citations omitted). The Court must independently ascertain whether there exists *prima facie* evidence that the defendant acted with a deliberate disregard of the rights or safety of others.

**B. Legal Analysis**

In the instant case, the record, which constitutes the Plaintiff's *prima facie* case, amply supports a reasonable Jury's conclusion that Officers Warosh, Anderson and Roth deliberately disregarded Mr. Kuha's safety and right to be free from excessive force in effecting his arrest. The Defendants' decision to employ a helicopter, at least three police officers and a canine to pursue and apprehend an unarmed, non-violent traffic offender, who posed no risk to the public's safety, constituted a deliberate disregard for Mr. Kuha's rights and safety. See Kopf v. Wing, 942 F.2d 265 (4th Cir.1991).

Not every flight from the police requires an immediate chase to apprehend the one who had fled. Here the decision to give chase was an excessive overreaction to the circumstances that posed a graver danger to the officers and the community than the facts which gave rise to the chase in the

first place. Here Officer Roth retrieved Mr. Kuha's driver's license from the abandoned vehicle. While there is evidence that the police computers were down at the time of the stop, which prevented Officer Roth from getting any information about the vehicle or Kuha, this fact does not make the decision to pursue Kuha with potentially lethal force any more reasonable. Using the drivers' license he recovered from inside the car, Officer Roth could have easily located Mr. Kuha to later serve him with a citation for the traffic offense. Using potentially lethal force to immediately apprehend Kuha was plainly excessive under these circumstances. Moreover, even if Officer Roth's more serious suspicion, that the vehicle may have been stolen, was supported by probable cause,[3] the use of potentially deadly force to pursue Kuha was still plainly excessive under the circumstances. The car had been abandoned by Kuha. Roth could have impounded the car, and after the computers were again functional, he could have later investigated whether it was stolen.[4] The plaintiff has met his burden under the statute to present sufficient evidence to permit a jury to conclude that the Defendants used excessive force in apprehending Mr. Kuha in deliberate disregard of his rights and safety.

---

[3]The only evidence defendants point to in support of this suspicion is that the car had a broken windshield and there was a tire on the passenger seat. While the court can see no relationship between these two facts and the likelihood that the car was stolen, the court will express no opinion on the reasonableness of the suspicion and will assume for the purpose of this motion that Officer Roth in good faith suspected the car might have been stolen.

[4]Even if the police were pursuing Kuha for his unexplained flight from them, see Minn. Stat. §609.50 (2000), the use of potentially deadly force was still in deliberate disregard of Kuha's rights and safety. A peace officer is permitted to use deadly force to make an arrest, only if the officer has reason to believe the person being pursued has committed or attempted to commit a felony involving the use or threatened use of deadly force, or if the officer has reason to believe that the person will cause death or great bodily harm if his apprehension is delayed. Minn. Stat. §§629.33; 609.075. Neither circumstance motivated the pursuit and arrest of the plaintiff here.

Assuming *arguendo*, that the methods Defendants employed to chase Mr. Kuha did not amount to excessive force, the circumstances surrounding the attack by Arco plainly did amount to a deliberate disregard of Mr. Kuha's rights and safety. Once Mr. Kuha raised his arms in the air and called out his surrender, Arco, who was under Officer Anderson's control, should have been prevented from biting him. Giving the Defendants the benefit of every conceivable doubt and presuming that they still felt Mr. Kuha posed a threat to their safety, once they ascertained that he was unarmed, Arco should have been ordered to release Mr. Kuha. Instead, the record reveals that Officer Anderson told Mr. Kuha that he was "not going to call off the dog until [he] . . . let go of the dog's head" and allowed the attack to continue for approximately 15 seconds. On this record, the Court finds that there is sufficient evidence permitting a jury to conclude that the Defendants' failure to prevent Arco from biting Mr. Kuha or calling him off, amounted to a deliberate disregard of Mr. Kuha's rights or safety.

Mr. Kuha's *prima facie* evidence demonstrates that he is entitled to plead a claim for punitive damages against Officers Warosh, Roth and Anderson, in their individual capacities, leaving to the Jury the propriety for such an award under the facts of this case. Accordingly, Plaintiff's Motion to Amend the Complaint will be granted.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

A. Plaintiff's Motion to Amend the Complaint to Add a Claim for Punitive Damages [#6] is **GRANTED**;

B. Plaintiff is directed to file, forthwith, his Amended Complaint, in substantially the form and content as was filed in support of the Motion to Amend, and the Defendants are directed to serve an Amended Answer in accordance with the governing Rules of Civil Procedure.

DATED: April 16, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge