UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey M. Kuha,

Plaintiff,

vs.

City of Minnetonka,

Defendant.

Court File: 00-1683 JMR/FLN

**DEFENDANT'S CONCISE STATEMENT OF CASE-IN-CHIEF**

On September 22, 1999, Plaintiff Jeffery Kuha went out drinking with a couple of friends. After drinking at the bar for several hours, Kuha went back to his friends' apartment. On his way home, Kuha hit a curb of the road, got a flat tire, and caused substantial damage to his car. After fixing his tire, Kuha began heading home. While driving home, Kuha encountered Minnetonka Police Officer William Roth in the opposing lane of travel. Kuha failed to dim his headlights for Officer Roth's vehicle. In response, Officer Roth made a U-turn and eventually lawfully stopped Kuha's vehicle.

As Officer Roth was calling in Kuha's license plate; Kuha opened his car door, looked back towards Officer Roth, began running down the road, and darted into a swamp. The evidence will establish normal Officer Roth could hear Kuha swimming across the swamp. At this time, Officer Roth called for additional squads. These additional squads included Minnetonka Police Officers Rain, Warosh and Anderson, with his canine Arco, as well as one or two squads from Hopkins and a helicopter.

After locating wet footprints exiting the swamp, Officer Anderson, with his canine Arco on a leash, followed the scent trail towards an apartment building. Minnetonka Police Officer

Warosh was also with Officer Anderson and Arco. Officer Warosh was acting as Officer Anderson's cover man.

Arco eventually found Kuha hiding, without his clothes on, in some tall weeds on the side of a hill. Arco apprehended Kuha by biting him in the upper thigh. Officer Anderson did not order Arco to release Kuha until he had cleared the area of weapons. This took approximately fifteen seconds. Once the officers noticed Kuha's injuries, they began medical treatment and called for an ambulance. Contrary to Kuha's claim, the officers were never aware of his precise location or that he had given up. Kuha's blood alcohol was later determined to be .15, substantially higher than the legal limit. Kuha ran and put his safety, and the safety of the pursuing officers, at risk because of his desire to become a commercial airline pilot.

Kuha brought this suit against Defendants City of Minnetonka and Officers William Roth, Kevin Anderson, and Dennis Warosh for excessive force, assault, battery and negligence. Following an appeal to the Eighth Circuit, all claims except the constitutional claim against the City of Minnetonka have been dismissed.

The following issues will be decided by the jury:

1. Whether Officer Anderson used excessive force when his police dog, trained in the bite and hold method, apprehended Kuha without first giving him a warning and opportunity to peacefully surrender?

2. If so, whether the City of Minnetonka's policy concerning warnings for police dogs is unconstitutional?

3. If so, whether the City of Minnetonka's policy was the cause of the constitutional violation?

The City will establish there was no constitutional violation and, further, the City's policy is constitutional. The Eighth Circuit has rejected Kuha's contention the use of a properly trained

police dog amounts to the use of deadly force. The evidence will establish the bite and hold method is the most widespread police dog training method, which has been adopted by the United States Police Canine Association (USPCA).

Common sense dictates normal people do not flee from minor traffic offenses. The evidence will establish it was reasonable for the officers to believe they were dealing with something more nefarious than failure to dim. More importantly, the evidence will establish it was reasonable for the officers to attempt to apprehend Kuha, who fled from a lawful stop. The officers, Chief Rikala, and Janet Ballard, the City's consultant, will describe the City's policy on use of police dogs and warnings. In particular, Officer Anderson will describe his training, the City's policy on warnings and why no warning was given (or required) in this specific situation. The City's expert, Don Slavik, will also discuss standard police practice, the USPCA standards and the proper use of the police dog in this case.

The City will also establish through the testimony of its witnesses that its policies and procedures did not authorize the unconstitutional use of a police canine. Rather, the City's policies and procedures required a warning under normal circumstances, which this was not. The City welcomes the opportunity to explain its actions to a jury.

Respectfully submitted,

IVERSON REUVERS, LLC

Dated: July 6, 2004.

By: s/ Paul D. Reuvers

Jon K. Iverson, I.D. #146389
Paul D. Reuvers, I.D. #217700
Attorneys for Defendant
9321 Ensign Avenue South
Bloomington, Minnesota 55438
(952) 548-7200