UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jeffrey M. Kuha,

Plaintiff,

vs.

City of Minnetonka,

Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE**

---

Plaintiff seeks to exclude the medical record recording a blood alcohol level of .15 when he was admitted to the hospital at 6:58 a.m. following his arrest. The Court should deny Plaintiff's motion because this evidence is admissible under Federal Rule of Evidence 403 because it tends to make more probable that Plaintiff acted as Defendant contends.

Contrary to Plaintiff's assertion, the probative value of the blood alcohol level does not outweigh it prejudicial value. Courts have consistently determined evidence concerning alcohol and drug consumption in § 1983 cases is admissible. *See Turner v. White*, 980 F.2d 1180, 1182-83 (8th Cir. 1992); *Palmquist v. Selvik*, 111 F.3d 1332, 1341-42 (7th Cir. 1997); *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1980); *Edwards v. Thomas*, 31 F.Supp.2d 1069, 1072-72 (N.D. Ill. 1999).

For example, in *Turner v. White,* the Eighth Circuit held the district court did not abuse its discretion when it refused to exclude evidence of alcohol consumption under Federal Rule of Evidence 403. The Eighth Circuit reasoned:

> Here, the court refused to exclude the evidence of alcohol consumption under Federal Rule of Evidence 403, ruling that this evidence was relevant to the question of Keith Turner's and Joseph Downing's actions and reactions when the officers shouted at them to get out of the car, and that the probative value of the

> evidence outweighed any unfair prejudice. We see no error in that ruling. In reaching its verdict, it was incumbent upon the jury to consider Officer White's actions in relation to all the circumstances of the situation that confronted him. We therefore believe the evidence of alcohol consumption was relevant to the jury's assessment of that situation, and we conclude that in balancing its probative value against the risk of undue prejudice, and in ruling it admissible, the trial court did not abuse its discretion.

980 F.2d at 1182-83. The Eighth Circuit cited to the Seventh Circuit's decision in *Saladino v. Winkler*, *supra*. *Saladino* involved an action against a police officer for the use of excessive force in disarming the plaintiff. The Seventh Circuit affirmed the admissibility of the evidence of the plaintiff's intoxication as it "tends to make [it] more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life." 609 F.2d at 1214.

Similarly, the evidence of Plaintiff's intoxication is admissible because it is relevant to the jury's assessment of the situation. Plaintiff, himself, concedes he ran from the police to avoid a conviction for driving while intoxicated. More importantly, however, what happened at the end of the track to locate Plaintiff is the critical inquiry in this case. Plaintiff contends he had given up, had his hands raised as he yelled out to the officers, and was no longer hiding from the police. *Pl. Depo.*, pp. 52, 53. Specifically, he testified, "I don't believe you would think I was hiding by raising your hands and yelling out to somebody." *Id.*, p. 53. He added, "I realized that they were walking up to me, so that's when I raised my hands and let them know where I was." *Id.*, p. 54. The arresting officers dispute Plaintiff ever called out or let the officers know where he was. At that time of day, when it is very quiet, the officers certainly would have heard him calling out to them. Plaintiff also took his clothes off either because he was cold, as he contends, or to throw off the pursuing police dog. Moreover, Plaintiff continued to ask the officers if they "caught the other guy" at the scene and at the hospital, according to Officer Roth. *Id.*, p. 81.

These are not the actions of an individual who had "given up" but the actions of an individual intent upon continued deception of the police to avoid any personal responsibility for his bizarre and unexplainable conduct.

Plaintiff also claims he was sitting in an opening in the grass in an area "maybe about 5 or 7 feet around that there was no grass." *Id.*, p. 55. The arresting officers dispute Plaintiff was sitting in a clearing and assert he was hiding in thick grass. Defendant also believes Plaintiff kicked at the dog causing the dog to react. Plaintiff, however, denies kicking the dog. *Id.*, p. 56. Arco was trained to bite the arm, not the leg, particularly if his arms were raised as Plaintiff claims. It is undisputed not every track ends in a bite. In fact, Arco only had one previous de minimus bite despite several years of police work. Under the circumstances, Plaintiff's intoxication level lends credence to Defendant's position that Plaintiff did something to cause the dog to react in manner in which it did and bite Plaintiff on the leg.

Plaintiff's impaired decision-making, i.e., running from a traffic stop, swimming through a swamp, climbing through the woods, taking his clothes off, and hiding in the tall grass, and his failure to give up ultimately led to his apprehension by Arco. The jury should be allowed to consider Plaintiff's actions and weigh his version of the facts, in light of his extreme intoxication level. Accordingly, Defendant respectfully requests the Court deny Plaintiff's motion in limine.

Respectfully submitted,

IVERSON REUVERS, LLC

Dated: July 26, 2004.

By: s/ Paul D. Reuvers
Jon K. Iverson, I.D. #146389
Paul D. Reuvers, I.D. #217700
Attorneys for Defendant
9321 Ensign Avenue South
Bloomington, Minnesota 55438
(952) 548-7200